Rockingham, }
Mar. 10, 1952. }  No. 4099.

EXETER BANKING COMPANY *v.* WILLIAM H. SLEEPER & *a.*

*George R. Scammon* for the plaintiff, filed no brief.

*John J. Sheehan,* United States Attorney and *Robert D. Branch,* Assistant United States Attorney (*Mr. Branch* orally), for the defendant, the United States of America.

*Wayne J. Mullavey* (by brief and orally), for the defendants William H. Sleeper and William H. Sleeper, Jr.

BLANDIN, J. The parties agree the issue here is whether a valid mortgage lien existed on the property in question in favor of the defendant Sleeper prior to the creation of the tax liens of the claimant, the United States of America. If such a lien did exist, then Sleeper must prevail. *United States* v. *Sampsell,* 153 F. (2d) 731; note 174 A. L. R. 1387. This is true here whether or not the authority of the *Sampsell* case, so far as it applies to inchoate liens, has been affected by the decision in *United States* v. *Savings Bank,* 340 U. S. 47. See also, anno. 95 L. ed. 59, 65, 67. The claimant has no lien except that given it by statute. *Flack* v. *Agency,* 96 N. H. 335, and authorities cited. In this case, the federal statute expressly provides that the lien created by 26 U. S. C. A. *s.* 3670

"shall not be valid as against any mortgagee" until certain notices are filed. 26 U. S. C. A. s. 3672 (a) (2). Admittedly, the required notices were not filed until long after the mortgage was executed and recorded. It appears that the claimant, who concededly derives all its rights from Lessard, has none superior to those of the defendant Sleeper. The latter executed a substantial part of his agreement in that he gave Lessard exclusive possession and use of all the properties mortgaged, both real and personal, from the date of the contract until the fall of 1948. Considering that they consisted of a hotel, camps, barracks so-called, and furnishings, it is obvious that the defendant might sustain substantial damage from Lessard's failure to perform—and this fact was recognized in our previous opinion. *Lessard* v. *Sleeper*, 96 N. H. 268. So far as the record indicates, his only means of satisfying such damages are from the disputed fund.

In his original petition Lessard prayed that the mortgage foreclosure by Sleeper be enjoined and the mortgage declared null and void. The master filed a report recommending that this be done, but the Superior Court disallowed the report, ruled the mortgage valid and ordered the bill dismissed. In this situation our previous opinion recognized, as it was forced to do, that unless the Superior Court's order was reversed, Sleeper could go ahead with the foreclosure sale. This it appears is the reasonable construction of our statement that "outstanding in the hands of the defendant the mortgage constitutes . . . a constant threat of foreclosure by power of sale." *Lessard* v. *Sleeper*, 96 N. H. 268, 272. Regardless of the earlier language in the opinion which might suggest a different conclusion, the plain purpose and effect of our order *"Bill dismissed nisi"* was to confirm the order and ruling of the Superior Court holding the mortgage not null and void but leaving it valid and uncancelled on the record to protect Sleeper in the event Lessard did not pay such damages as might be assessed against him for his breach. This was not inequitable since Sleeper had substantially performed by permitting Lessard to use all the property from August 29, 1946, to the fall of 1948. See *Rutherford Nat. Bank* v. *Bogle & Co.*, 114 N. J. Eq. 571, and authorities cited; *Tancred* v. *Beppler*, 15 N. J. Super. 394.

The claimant was put on notice of the situation by the mortgage recorded on September 13, 1946, long prior to the inception of any of the liens. See *Hargett* v. *Hargett*, 201 Ala. 511. In this respect the case is clearly distinguishable from such decisions as *Butler* v.

*Wheeler*, 73 N. H. 156, where the attaching creditors had no notice, actual or constructive, of other claims. It follows that since Sleeper had a valid mortgage which takes precedence over the Government liens, his assignee is entitled to the fund.

*Judgment for the defendant, William H. Sleeper, Jr.*

KENISON and DUNCAN, JJ., dissented: the others concurred.

DUNCAN, J., *dissenting:* The funds held by the plaintiff bank and now claimed by the United States and the assignee of William H. Sleeper are proceeds of the sale of an equity of redemption in hotel property conveyed in 1945 by Sleeper to Edgar P. Lessard, and thereafter foreclosed by the bank under a mortgage to which Lessard's title was subject. Prior to the foreclosure, Lessard undertook to purchase adjoining property from Sleeper for the sum of $15,000 by an agreement dated August 29, 1946, more particularly set forth in *Lessard* v. *Sleeper*, 96 N. H. 268, 269. A second mortgage to Sleeper of the hotel property acquired by Lessard in 1945 was placed in escrow pursuant to the agreement, and was the subject of the litigation in which the last cited opinion was rendered. It now appears that in June, 1950, the mortgage and the note secured thereby were assigned by Sleeper, and the assignee's claim to the fund held by the bank is founded upon that mortgage. The claim of the United States is based upon liens for taxes assessed against Lessard in 1947 and subsequent years. Notice of the first lien was filed in the office of the Clerk of the United States District Court on May 28, 1948, and like notices were filed in subsequent years.

The Trial Court ruled that "as a result" of the entry of final judgment upon an order dismissing the bill in *Lessard* v. *Sleeper*, "there was a valid mortgage existing between Lessard and Sleeper," which had priority over the liens of the United States. In the opinion now rendered, which holds the second mortgage valid, apparently for the same reason, I am unable to concur.

It was expressly decided in *Lessard* v. *Sleeper, supra*, 271, that the mortgage of August 29, 1946, never became effective, for want of valid delivery. As between Sleeper and Lessard, and their respective privies who are the adverse claimants in these proceedings, that determination is *res judicata. Morgan* v. *Burr*, 58 N. H. 470. The question of the validity of the mortgage was then in issue (*cf. Laconia Nat. Bank* v. *Lavallee*, 96 N. H. 353), and it was neces-

sarily determined in that action. See 50 C. J. S. 237, 238. The plaintiff Lessard's right to cancellation of the mortgage depended upon its invalidity, and he was held to be entitled to cancellation provided he should do equity by satisfying any damages occasioned the defendant Sleeper by his breach of contract. It now appears that no decree of cancellation was entered because the condition was never complied with. But Lessard's failure to take the steps necessary to entitle him to the aid of equity could not operate to make the ineffective mortgage enforceable, or to validate the invalid delivery of the mortgage in 1946. Denial of the aid of equity to Lessard could not deprive him of his title to the hotel. "Having a legal right, the fact his equitable remedy is lost does not show that all his rights are obliterated." *Nashua Hospital* v. *Gage*, 85 N. H. 335, 342. No more could the denial of relief to Lessard create a property interest in Sleeper which he did not previously have. The mortgage was no more effective in 1951 than it was in 1946. Title still remained in Lessard. *Stockwell* v. *Williams*, 68 N. H. 75. It follows that Sleeper never acquired any interest in the premises owned by Lessard and later sold by the bank, and that his recent assignment of the mortgage conveyed no rights in the proceeds from foreclosure of the first mortgage.

Reliance is placed upon a statement in the former opinion that the second mortgage constituted "a constant threat of foreclosure." The sentence described the mortgage as a cloud upon title, and imported no recognition of a *right* of foreclosure.

The apparent concern over the chance that Sleeper was damaged by Lessard's breach of contract to purchase the adjoining property has no proper place in determination of rights in the hotel. As vendor of the other property Sleeper received substantial payments while the vendee was in possession (*Lessard* v. *Sleeper, supra,* 270) and the vendee never acquired title because he never accepted the vendor's deed. *Id.,* 271. No damages have been determined, and the possibility of their existence is no justification for an award of over $9,000 to the assignee upon a mortgage which has previously been held ineffective. This goes beyond protection of the vendor against the nonpayment of any damages that might be assessed against the vendee. In substance, the defendant in the prior litigation is now rewarded for action previously described as a breach of contract on his part. *Id.*

The liens of the government attached to whatever interest Lessard had in the hotel equity. If in fact that interest was greater

than the records appeared to indicate because of the invalid second mortgage, the liens attached to the larger interest. See *Beland* v. *Goss*, 68 N. H. 257. The statute creating the liens (26 U. S. C. A. s. 3670) operated to vest an immediate interest in the United States (*United States* v. *Greenville*, 118 F. (2d) 963, 965) of no lesser standing than that of an attaching creditor. *United States* v. *Savings Bank*, 340 U. S. 47. I would give judgment for the United States.

KENISON, J., concurred in the foregoing opinion.