495 So.2d 559 (1986)
Sylvia COOPER
v.
BISHOP FREEMAN COMPANY and Jerry Russell.
84-571.
Supreme Court of Alabama.
August 22, 1986.
*560 Michael Jackson of Prestwood, Prestwood & Jazwinski, Andalusia, for appellant.
W. Beatty Pearson of Powell, Powell & Pearson, Andalusia, for appellee Bishop Freeman Co.
J.M. Albritton of Albrittons & Givhan, Andalusia, for appellee Jerry Russell.
PER CURIAM.
The plaintiff-appellant, Sylvia Cooper, suffered burns on her left arm and hand while operating a fabric pressing machine at her place of employment. Plaintiff filed suit against the machine's manufacturer, Rheem Textiles Systems, Inc. (designated in plaintiff's complaint as New York Pressing Machinery Corporation), alleging that the machine was defective and that the defendant had breached an implied warranty of merchantability. Plaintiff also sued Bishop Freeman Company, which manufactured a steam diffusing plate ("gird plate") that was a component part of the machine. In addition, plaintiff sued a co-employee maintenance mechanic, Jerry Russell, for negligence in maintenance of the machine.
Rheem Textiles Systems, Inc., was dismissed as a defendant by the trial court because of insufficient contacts with the state of Alabama to be subject to the jurisdiction of the trial court. Plaintiff's case proceeded to trial with Bishop Freeman Company and Russell as defendants.
The pressing machine that plaintiff was operating is composed of a table with a flat *561 surface and hot overhead pressing apparatus (head) which travels downward to make contact with the table surface when the operator manually presses a recessed starting switch located below the table's surface. The steam diffusing plate manufactured by Bishop Freeman Company was attached to the underside of the head. The diffusing plate is a flat metal surface with perforations that is designed to evenly distribute steam across the pressing surface of the head.
Plaintiff alleged that the loosening of a bolt on the pressing machine allowed the machine's table top to make contact with the starting switch when pressure was applied to the work surface, which in turn caused the head to unexpectedly drop to the work surface without the operator's manually depressing the starting switch. Plaintiff's left arm was positioned beneath the head when the head fell upon her arm and caused a burn injury.
Pursuant to the Alabama Extended Manufacturer's Liability Doctrine (AEMLD), plaintiff alleged that Bishop Freeman Company had failed to warn plaintiff of the propensity of the steam diffusing plate to become extremely hot during the machine's operation and had failed to adequately guard it. Plaintiff also alleged that Russell was negligent in failing to discover the loose bolt on the pressing machine, or, if he had discovered it, was negligent in failing to warn plaintiff of it.
The case was tried in November 1984, and the jury returned a verdict for the defendants. Plaintiff's motion for new trial was denied by the trial court and plaintiff appeals.
Plaintiff asserts that the trial court erred in denying her new trial motion, and she asserts the following reasons:
(1) The trial court abused its discretion by sustaining defendants' objection to plaintiff's proposed voir dire questions to the jury venire concerning potential relationships of the venire members and their families with liability insurance companies;
(2) The interjection of workmen's compensation insurance during trial irreparably prejudiced the jury against plaintiff;
(3) The trial court impermissibly charged the jury on contributory negligence and assumption of risk; and
(4) The trial court incorrectly charged the jury on the law of assumption of risk.
The denial of a motion for new trial is within the sound discretion of the trial court, and this Court will not disturb the trial court's denial of the new trial motion unless some legal right was abused and error is plainly shown within the record. Hill v. Cherry, 379 So.2d 590 (Ala.1980).
Cooper's counsel filed requested voir dire questions, which included the following inquiries:
"7. Are you employed by an insurance company, or is any member of your family so employed?
"8. Have you ever worked for an insurance company claims department?
"9. Are you related by blood or marriage to any insurance adjuster?"
Defense counsel objected to these questions as being overly broad, and the trial court sustained the objection. Although the record is scanty, it appears that the trial court limited its inquiry into the insurance carrier relationships of the jury to asking if any venire member was an agent, stockholder, or officer of the two liability carriers at risk in the case. At trial, Cooper's counsel requested that the venire be asked whether any member was related to any insurance adjuster employed by either of the two liability carriers at risk in the case, but the trial court denied the request.
Such an inquiry was sanctioned by a majority of this Court in Alabama Power Co. v. Bonner, 459 So.2d 827 (Ala. 1984). Upon reconsideration, however, we have concluded that this aspect of the majority opinion in Bonner is incorrect. Therefore, the view expressed in the dissenting opinion in Bonner is hereby adopted as the law in this jurisdiction, and insofar as the majority opinion in Bonner departed from the principles expressed in *562 that dissenting opinion, it is expressly overruled. (The dissenting opinion in Bonner is set out as an appendix to this opinion.) Accordingly, the trial court in this case did not err by denying Cooper the opportunity to qualify the venire as requested.
Neither did the trial court err by denying plaintiff's new trial motion on the basis of the interjection of workmen's compensation insurance during the trial. The record reveals the interjection of workmen's compensation insurance on four occasions; three references by defense counsel and one reference by the plaintiff in response to a question propounded by her attorney. Plaintiff's counsel objected to each reference to workmen's compensation insurance by defense counsel, and each objection was sustained by the trial court. Plaintiff's counsel requested and received a limiting instruction to the jury by the trial court after each objection was sustained. However, no motion for mistrial was ever made by plaintiff's counsel.
This Court has held:
"In a case where objection to improper argument is made and sustained, with immediate and strong action by the trial court instructing the jury that such argument was not correct and admonishing them not to consider it, the test on motion for new trial and on appeal is whether the argument was so harmful and prejudicial that its influence was not or could not be eradicated by the action of the court. McLemore v. International Union, etc., 264 Ala. 538, 88 So.2d 179...."
Otis Elevator Co. v. Stallworth, 474 So.2d 82 (Ala.1985). Or, as put forth in Louisville & N.R.R. v. Wade, 280 Ala. 453, 457, 195 So.2d 101, 104 (1967):
"[A] court which does all it is asked to do in sustaining objection to argument will not be placed in error for failing to do more, unless the argument is so grossly improper and highly prejudicial that its sinister influence cannot be destroyed by the action of the trial court. Ledbetter-Johnson Co. v. Hawkins, 267 Ala. 458, 103 So.2d 748."
In the instant case, the trial court did all it was requested to do. Objections to defense counsel's reference to insurance were sustained, and the trial court instructed the jury that workmen's compensation was not material to the case and should not be considered.
Although we are of the opinion that defense counsel's repeated attempts to put workmen's compensation insurance before the jury were improper, the actions of the trial court were sufficient to eradicate any possible prejudicial influence upon the jury.
Plaintiff contends that the trial court erred by charging the jury on assumption of the risk and on contributory negligence because there was no evidence at trial to support either charge. Each party is entitled to jury instructions based on the evidence, and an instruction is not objectionable as being abstract when there is any evidence on which to predicate it. Coulter v. Holder, 287 Ala. 642, 254 So.2d 420 (1971); Alabama Produce Co. v. Smith, 224 Ala. 688, 141 So. 674 (1932).
Defendants argue that the charges of contributory negligence and assumption of risk were warranted under the evidence. Defendants rely upon the following evidence in support of their position:
(1) Plaintiff testified that she had experience working with pressing machines;
(2) Plaintiff testified that she knew that the press generated heat and that it could burn her;
(3) At the time plaintiff was injured, she had her left arm under the pressing head, but did not have a garment on the work surface.
We are of the opinion that this evidence supports the trial court's jury charge of assumption of risk as to plaintiff's claims against Bishop Freeman Company. This evidence does not, however, support the trial court's charge of contributory negligence as to plaintiff's claims against Bishop Freeman Company or the charges of assumption of risk and contributory negligence *563 as to plaintiff's negligence claim against Russell.
As previously discussed, plaintiff's allegations against Bishop Freeman Company are based upon the AEMLD. Assumption of risk and contributory negligence are affirmative defenses to an AEMLD action. Atkins v. American Motors Corp., 335 So.2d 134 (Ala.1976). The Court in Atkins adopted a form of contributory negligence, calling it, as it is often commonly referred to, "assumption of risk." See Restatement (Second) of Torts § 402A comment n. (1965). Under this rule: "If the user or consumer discovers the defect and is aware of the danger, and nevertheless proceeds unreasonably to make use of the product and is injured by it, he is barred from recovery." 335 So.2d at 143.
Also in Atkins, the Court recognized that other forms of contributory negligence, such as product misuse, may be a defense to an action under the AEMLD. Id.
Plaintiff's testimony in the case at bar that she was aware that the pressing machine head was hot and that it could burn her, was sufficient to allow the jury to conclude that plaintiff had knowledge and appreciation of the risk that she alleged the Bishop Freeman Company had failed to warn her of or protect her against. Therefore, the assumption of risk charge was warranted. However, we fail to see how the fact that plaintiff had her arm positioned beneath the head of the machine warrants the court's contributory negligence charge. Obviously, it was necessary for the plaintiff to place her hands and arms beneath the press head in order to position a garment for pressing. Although there was no garment on the work surface at the instant the head fell, had there been a garment in position the resulting injury to plaintiff would still have occurred. There was no evidence that plaintiff's actions in placing her arm beneath the machine without having a garment in place was in any way improper so as to give rise to an inference that the plaintiff was negligent. Based upon this evidence, the charge of contributory negligence was not warranted.
We are of the opinion that it was improper for the trial court to charge the jury on assumption of risk and contributory negligence with regard to plaintiff's negligence claim against Russell. This Court has continued to recognize a distinction between assumption of risk and contributory negligence as defenses to actions in simple negligence. See Employers Casualty Co. v. Hagendorfer, 393 So.2d 999 (Ala.1981). Contributory negligence, in this context, is negligence on the part of the plaintiff that proximately contributes to the plaintiff's injury. See Insurance Co. of North America v. Mays, 278 Ala. 20, 174 So.2d 700 (1965); see also Alabama Pattern Jury Instructions: Civil, § 30.00. In Alabama, the term "assumption of risk" has been used to describe a form of contributory negligence applicable to factual situations in which it is alleged that the plaintiff failed to exercise due care by placing himself or herself into a dangerous position with appreciation of a known risk. This so-called assumption of risk was dealt with in Baptist Medical Center v. Byars, 289 Ala. 713, 717, 271 So.2d 847, 849 (1972), wherein the Court observed:
"The essential elements of contributory negligence in Alabama where the plaintiff assumed the risk or consequences by placing himself into a dangerous position are (1) knowledge by the plaintiff of the condition; (2) appreciation of the danger under the surrounding conditions and circumstances; and (3) failure of the plaintiff to exercise reasonable care in the premises, but with such knowledge and appreciation to put himself into the way of danger." (Citations omitted.)
There was no evidence in the case at bar to support the trial court's charges of contributory negligence and assumption of risk with respect to plaintiff's claims against Russell. Plaintiff testified that she was unaware of the loose bolt on the machine or that the head would fall unexpectedly. Moreover, Russell testified that *564 he had inspected the machine in the morning of the day plaintiff was injured and did not observe the alleged defect or any other abnormality. There was no evidence of any prior problems with the pressing machine, and Russell testified that he had received no complaints about the machine's operation. There is no evidence that plaintiff had any knowledge of the alleged defect or that she was in any way negligent in the operation of the pressing machine. The trial court erred by charging the jury on contributory negligence and assumption of the risk under this evidence.
Finally, plaintiff argues that the trial court incorrectly stated the law of assumption of risk in its charge to the jury. Although the giving of an incorrect jury charge is reversible error, Liberty National Life Ins. Co. v. Smith, 356 So.2d 646 (Ala.1978), it is incumbent upon the party objecting to a jury charge to state the grounds for objection so as to give the trial court the opportunity to correct faulty instructions. See Rule 51, A.R.Civ.P.; Crigler v. Salac, 438 So.2d 1375 (Ala.1983). In the instant case, plaintiff objected to the charge on the grounds that there was insufficient evidence upon which to predicate it. On appeal, however, plaintiff objects on the grounds that the charge was a misstatement of substantive law. This objection was not made to the trial court, and, therefore, the alleged error is not preserved for review.[1] See Louisville & N. R.R. v. Garrett, 378 So.2d 668 (Ala.1979).
REVERSED AND REMANDED.
TORBERT, C.J., and MADDOX, BEATTY, HOUSTON and STEAGALL, JJ., concur.
JONES, SHORES, ALMON and ADAMS, JJ., concur in part and dissent in part.

APPENDIX
"BEATTY, JUSTICE (dissenting [in Alabama Power Co. v. Bonner]):
"Because the majority opinion effectively changes the long-established principle concerning the injection of insurance into a civil case, for no reason presented to the Court other than the opinion of counsel, I must respectfully dissent.
"It should be noted first that this is not a case in which a witness has revealed insurance, nor is it a case in which reference has been made to insurance in closing argument. It is a case in which additional reference to insurance has been allowed during juror qualification. That process used in this case bears repeating.
"During the voir dire examination of the venire, the trial court inquired whether any of the panel was an `officer, stockholder, agent, servant or employee of Travelers Insurance Company.' No responses were made. Later, during voir dire, counsel for plaintiff was allowed to make the following inquiry:
"`I would like to ask the jury panel, you have been qualified on certain things; but further is there any member of your family that works as an insurance adjuster for any company handling adjustments, claims or sells insurance or works as a secretary or salesman for any insurance company?' (Emphasis added.)
This question was asked over defense counsel's objection that it was "not a proper qualification."
"This is not a case in which an insurance company was a party. Here, the insurance company's relevance to the case was only that, in the event of a recovery for the plaintiff, it would pay the money judgment. In such circumstances, i.e., where the insurance carrier is involved only because it will pay a judgment against its defendant-insured, Alabama has long adhered to the *565 principle indicated by the question asked in this case by the trial court: whether any member of the panel was an officer, stockholder, agent, servant or employee of `X Insurance Company.' That has been the extent of any reference to insurance in qualifying the venire. Vredenburgh Saw Mill Co. v. Black, 251 Ala. 302, 37 So.2d 212 (1948). Unlike Alabama, some states have allowed the venire to be asked that question without reference to a particular insurance company, e.g., interest in `any' insurance company. Annot. 4 A.L.R.2d 761, 811. The majority's opinion goes further than either of those views. It not only allows inquiry into interest in any insurance company generally, but asks whether family members work for any insurance company.
"The majority justifies this action by relying on a statute which has been repealed, see Code of 1975, § 1-1-10, and finding the question of plaintiff's counsel to be an inquiry into a matter that might affect the verdict, which the trial court, in its discretion, may permit. Although Title 30, § 52, Code of 1940, has been superseded by Rule 47, A.R.Civ.P., which provides that `[t]he court may permit the parties or their attorneys to conduct the examination of prospective jurors or may itself conduct the examination,' the long-standing rule in this state concerning the introduction of insurance in qualifying the venire was set forth by this Court in Gwin v. Church, 272 Ala. 674, 680, 133 So.2d 880 (1961):
"`The rule is firmly settled in this state that the plaintiff is entitled, upon his seasonable and proper motion, to have the jury qualified as to their relation to, or interest in, any insurance company which would be liable, in whole or in part, for any judgment that might be rendered against the defendant. [Citations omitted.] On the other hand, counsel should be careful to avoid saying or doing anything which would lead the jury to believe that his opponent has insurance to protect him in respect to the matter in controversy when reference to insurance is not admissible for any proper purpose....'
"Until now any `proper purpose' of showing bias or interest in a member of the venire for an insurance company has been limited to an application of the principle stated in the first sentence of the above quotation.
"Of the five cases cited by the majority as authority to depart from this well-settled rule, three are criminal cases in which insurance is not involved and which, therefore, have no bearing on the present case. Avery Freight Lines, Inc. v. Stewart, 258 Ala. 524, 63 So.2d 895 (1953), involved not only an inquiry into whether any member of the venire was a stockholder or employee of the defendant's liability insurance carrier, but also an inquiry `for information of counsel only' as to whether `any of you [members of the venire] have any relatives who work for that concern.' 258 Ala. at 526, 63 So.2d at 895-96. There was, however, no proper objection to the question propounded by the trial judge; consequently, any issue concerning the inquiry was not preserved for review. Notwithstanding this, this Court stated, in what amounts to dicta, that `[t]he inquiry is conceded to be one available to plaintiff's counsel under section 52, Title 30 of the Code.' 258 Ala. at 526, 63 So.2d at 896. However, it was recognized that the inquiry was limited to the defendant's insurance carrier: `The inquiry of the panel by the judge as to their relation to or interest in the insurance carrier of the defendant was proper unless attended by undue prejudicial circumstances.' (Emphasis added.) Id. Even if this case can be construed as permitting an inquiry into relatives' connections with an insurance company, it clearly limits the inquiry to the defendant's insurance company.
"Even the last case cited, Vickers v. Howard, 281 Ala. 691, 208 So.2d 72 (1968), does not support the majority's position. That case obviously concerned an inquiry into the occupation of the prospective jurors only, not any and all of their relatives. One member of the venire, Jerry Reynolds, `replied in open court that he was a Sentry *566 Insurance agent.' 281 Ala. at 693, 208 So.2d at 74. This Court held only that `[w]hen the juror answered that he was an insurance representative, plaintiff's attorney could have inquired further if he desired to strike casualty insurance salesmen or adjusters.' Id. A further inquiry into Reynolds's duties or responsibilities to determine possible bias, however, is vastly different from allowing a blanket inquiry as to whether any of the venire members have any relatives who work in any capacity for any insurance company. Such an inquiry has never before today been permitted in this state.
"Although I dissent to that practice here, as unsupported by any authority, nevertheless, I have no intellectual animosity toward such a far-reaching change should there have been any justification advanced for it. But, here we have been presented with nothing on which to base this reversal of the long-adhered-to principle except the argument in brief of plaintiff's distinguished counsel. He argues in his brief that the insurance industry is large; that every town has numerous sales agents; that many people depend directly upon the insurance industry, and, therefore, that some persons who had been qualified as to defendant's particular carrier might have been biased in favor of any insurance company.
"The majority's approval of the additional inquiry under the speculation, unsupported by any facts and without reference to any contravening interests, inevitably leads to a result akin to this paraphrase:
"`Ladies and gentlemen of the jury panel, you have been asked whether you are an officer, stockholder, agent, servant or employee of the Travelers Insurance Company, or whether you have any financial interest in that insurance company. You have said `no' to that question. Now to reemphasize the importance of insurance in this case, does any member of your family work as an insurance adjuster, or handle claims, or sell insurance, or work as a secretary or otherwise, for any insurance company?'
"For these reasons, I must respectfully dissent."
SHORES, Justice (concurring in part and dissenting in part):
I agree that the trial court erred in charging the jury on contributory negligence and assumption of risk.
I would not, however, overrule Alabama Power Company v. Bonner, 459 So.2d 827 (Ala.1984). I continue to believe that lawyers have a right to know what kind of work prospective jurors and members of their families engage in. Putting the question to the whole venire seems a simple way to learn whether any one of them or a member of one's family is employed by an insurance company, a bank, a hospital, or whatever the lawyer believes will aid in striking a jury. Surely the majority would agree that it is permissible to ask a prospective juror where he or she works and where that prospective juror's spouse works; but presumably the majority would not allow the lawyer to ask "Does your spouse work for an insurance company?" while nonetheless allowing the lawyer to ask "Does your spouse work for a bank?" I see no distinction between these questions.
JONES, ALMON and ADAMS, JJ., concur.
NOTES
[1] Nor is the error alleged by plaintiff preserved by coming under the exception which excuses the stating of grounds when a specific objection is made to a charge that misstates substantive law. See e.g., Louisville & N. R.R. v. Garrett, 378 So.2d 668 (Ala.1979). In this case, plaintiff stated grounds for her objection and the grounds she stated are not those now asserted on appeal.