MONROE, Judge.
In September 1994, Patricia Harper, as administratrix of the estate of Jason Spal-lino, deceased; and Mike Nelson, acting by and through his mother and next friend, Cheryl Sanders, filed separate actions against Christopher Eugene Meadows, Charles Tracy McCord, and the City of Dothan (“the City”).
The complaints alleged the following: That on a day in February 1994, Spallino and Nelson were passengers in an automobile driven by McCord; that the McCord vehicle was travelling northbound on Ross Clark Circle in Dothan; that at the intersection of Ross Clark Circle and Hartford Highway, McCord attempted to make a left turn onto Hartford Highway; that McCord turned into the path of a vehicle operated by Meadows, who was travelling southbound on Ross Clark Circle; that a collision occurred between the McCord automobile and the Meadows vehicle, the Meadows vehicle striking the McCord au *524 tomobile in the passenger-side door; that as a result of this collision, Spallino died and Nelson suffered serious injury; and that at the time of this accident, McCord, Meadows, Spallino, and Nelson were all between 16 and 18 years of age.
Before trial, the plaintiffs settled their claims against McCord and the City. The case proceeded to a jury trial on the plaintiffs’ claims against Meadows. The jury returned verdicts in favor of Meadows, and the trial court entered judgments on the verdicts.
Harper and Nelson appealed to the Alabama Supreme Court, which deflected the case to this Court, pursuant to § 12-2-7(6), Ala.Code 1975.
Harper and Nelson contend that the trial court committed reversible error when it allowed Meadows to introduce evidence indicating that Spallino and Nelson had smoked marijuana on the night of the accident. Harper and Nelson argue that this evidence was highly prejudicial, that it was not relevant, and that it had no probative value, because neither Spallino nor Nelson was shown to have had any control over McCord and his operation of the automobile on the night of the accident. Meadows argues that this evidence was relevant to the issue whether Spallino and Nelson were contributorily negligent, specifically, whether they failed to exercise reasonable care for their own safety on the night of the accident.
In Brown v. AAA Wood Products, Inc., 880 So.2d 784, 787 (Ala.1980), our supreme court stated:
“Negligence of the driver of a motor vehicle cannot be imputed to a passenger unless the passenger has assumed control and direction of the vehicle or has some right to a voice in the control, management, or direction of the vehicle. It is also true, however, that a person riding in a automobile driven by another is not absolved from all personal care for his oum safety, but has the duty of exercising reasonable or ordinary care to avoid injury. The duty of the passenger is, therefore[,] not original, with respect to the operation of the vehicle, but is resultant and is brought into effect by known and appreciated circumstances. Moreover, no fixed rule can be formulated which will apply fl> all cases that will determine when the duty arises, what particular circumstances will raise it, or what particular warning or protest will be sufficient to discharge the duty once it has arisen.
“It is clear that a mere opportunity to know the danger is not sufficient to invoke the duty in the absence of facts suggesting to the passenger, as a person of ordinary care, there was a necessity to keep watch. The duty of the passenger, or guest[] is said to arise when he should have anticipated the driver of the vehicle [would] enter the sphere of danger, or omit to exercise due care, not when he has the opportunity to anticipate the danger without anything to direct his attention to a condition requiring him to anticipate the vehicle is about to enter the sphere of danger or requiring him, in the exercise of ordinary care, to keep a lookout. With respect to this duty, it can make no difference in principle whether the suit is against a third person, or against the driver who negligently operates the car in which the passenger is riding; the duty of the passenger is the same in either case.
“.... There was evidence to show that both plaintiffs had planned to go hunting and at the time of the collision the truck in which they were riding was traveling on the wrong side of the road with the driver looking off into the woods. This evidence alone was sufficient to create a jury question as to whether the deceased passenger, Brown, had a duty to keep a watch or to give a warning. The issue of contributory negligence is to be determined by the jury, as a general rule, and ordinarily should *525 not be disposed of by the trial court in a peremptory manner.”
(Citations omitted; emphasis added.)
In Hamilton v. Kinsey, 337 So.2d 344, 346 (Ala.1976), our supreme court stated:
“When a driver is negligent, reckless or incompetent, and this is known to the guest, the duty of due care on the part of the guest arises. Under the facts of this case, a jury could have found that [the plaintiffs] entering the automobile as a passenger when the driver was intoxicated was contributory negligence, and could have found his failure to keep watch after entering, was also contributory negligence.”
(Citation omitted; emphasis added.)
Before trial, Harper and Nelson filed a motion in limine, requesting that the trial court order Meadows to avoid and refrain from referring to any evidence relating to Spallino and Nelson’s use of marijuana or other illegal drugs; they argued that such evidence was irrelevant and that its prejudicial value overwhelmingly outweighed its probative value. In their motion, Harper and Nelson pointed out that the evidence demonstrated that on the evening of the accident, “McCord did not appear to be intoxicated or under the influence in any way, a fact later confirmed by the Dothan Police after the administration of a blood test.” Harper and Nelson further emphasized, “[Meadows] has not, and cannot, cite a single case allowing for the contributory negligence of an intoxicated passenger riding with a sober driver.” (Emphasis in original.)
On page 14 of his brief on appeal, Meadows argues:
“In this case, [Spallino and Nelson] and [McCord] were driving around ‘looking for girls’ on the evening in question and at the time of the collision were positioned directly in front of oncoming traffic after refusing to stop and illegally failing to yield the right of way. The similarity of circumstances [to the facts in Brown, 380 So.2d 784] compel a similar conclusion: that [Spallino and Nelson] may have had a duty to keep a look out for their own safety, in which case their mental ability to keep a proper lookout was certainly material and relevant.”
On page 13 of his brief, Meadows argues:
“Moreover, an eyewitness to the accident testified that despite the fact that [Spallino and Nelson] were confronted with a sign directing them to yield to traffic coming from [Meadows’s] direction, their vehicle never even stopped before making the turn. It is certainly reasonable for a jury to infer, then, that both Nelson and Spallino should have realized the danger involved in ignoring a yield sign and turning across two lanes of oncoming traffic without even stopping, especially considering that it was their side of the vehicle facing traffic.”
However, as our supreme court stated in Brown, 380 So.2d at 787, “It is clear that a mere opportunity to know the danger is not sufficient to invoke the duty in the absence of facts suggesting to the passenger, as a person of ordinary care, there was a necessity to keep watch.” There was no evidence that McCord was intoxicated or under the influence of any drugs on the night of the accident. Additionally, there was no evidence that McCord’s actions on the night of the accident in any way suggested to Spallino and Nelson that there was a necessity to keep watch. Thus, the issue whether Spallino and Nelson had smoked marijuana on the night of the accident was not material or relevant — they were passengers in a vehicle driven by a sober driver.
We conclude that the trial court committed reversible error when it allowed the defendant to introduce evidence indicating that Spallino and Nelson had smoked marijuana on the night of the accident. That such evidence was not material or relevant to any issue and was highly prejudicial to the plaintiffs. Thus, the judgment must be reversed.
*526 Harper and Nelson also contend that the trial court committed reversible error when it refused to allow the attorney representing Harper and Nelson to ask insurance-related questions of the venire. In May 1998, the court granted a mistrial, apparently because Harper and Nelson’s attorney had asked the veniremembers about past and/or present employment in the insurance industry.
Before the trial, which occurred in October 1998, Meadows filed a motion in limine requesting that the trial court direct that no reference be made to the word “insurance” or to any matter pertaining to insurance, insurance adjusters, or insurance coverage. During arguments before the trial court, the attorney for Harper and Nelson stated:
“Just to respond, Judge, I think the Alabama Supreme Court precedents in that case clearly allows us to go into that here, and, obviously, I’m going to respect the order of the court. And we will deal with that issue later.”
The trial court responded:
“There will be a motion in limine granted, in that, with the court’s directive that the questions asked by the court will be sufficient.”
During its questioning of the jury veni-re, the court asked the following: “Are any of you stockholders, officers, policy holders or employees of Alfa Mutual Insurance Company?” There were no other questions concerning insurance.
In Burlington Northern R.R. Co. v. Whitt, 575 So.2d 1011, 1018 (Ala.1990), our supreme court stated:
“It is undisputed that attorneys have the broad right to question venire members as to any matter that might disclose a prospective juror’s bias, prejudice, or interest in the outcome of a trial. Inquiries such as whether the ve-nire members or anyone in their families is employed by, for example, a trucking company, a bank, or a railroad, or is self-employed provide useful information about a juror’s possible biases and allegiances. Limiting this otherwise broad right to question prospective jurors so as to exclude only the right to ask about insurance impermissibly hinders voir dire examination and is not justifiable. In attempting to strike a fair and impartial jury, attorneys have a legitimate interest in learning about any associations the venire has with the case, including the kind of work the prospective jurors and members of their families engage in.”
It would appear that the trial court im-permissibly limited voir dire examination of the veniremembers concerning whether they or their family members were, or had been, employed in the insurance industry.
Because we must reverse the judgment, we pretermit discussion of the other issues the parties have raised. The judgment is reversed and the case is remanded for proceedings consistent with this opinion.
REVERSED AND REMANDED WITH INSTRUCTIONS.
ROBERTSON, P.J., and YATES, J., concur.
CRAWLEY and THOMPSON, JJ., concur in result.